GABRIEL HERNÁNDEZ MORALES ET AL., Plaintiffs and Appellants, *v.* WENCESLAO CARABALLO, Defendant and Appellee.

No. 10686. Argued October 1, 1952.—Decided November 5, 1952.

*Francisco González, Jr.,* for appellants. *R. R. Rivera Correa* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In an action of revendication and for damages brought before the former District Court of Humacao, plaintiffs Gabriel, Pura, Ursula, José Luis and Federico Hernández Morales, alleged to be the owners in joint ownership of an undivided one-fourth interest in a house located at Lago Street of Gurabo, on a lot of the municipality of Gurabo, and which

has been in the possession of defendant Wenceslao Caraballo ever since June 1937. It is alleged in the complaint that Ursula Hernández Rivera was married to Santiago Morales and as husband and wife acquired under claim of construction with money belonging to the conjugal partnership the aforesaid house. Mrs. Hernández Rivera died intestate in December 1918, leaving among other properties, the undivided half of the afore-mentioned house and as her only and universal heirs her brothers Gabriel and Isidoro Hernández Rivera and her widower in the usufructuary quota. Gabriel Hernández Rivera, an heir, died intestate in 1923 leaving among other properties, his joint ownership of an undivided one-fourth interest in the house possessed by defendant, and as his only and universal heirs the plaintiffs herein. Neither Gabriel nor his heirs ever partitioned or liquidated the inheritance left by their predecessor Ursula Hernández Rivera with her widower neither during the latter's lifetime, nor after his death, with his heirs. Ever since June 1937, defendant Wenceslao Caraballo, without title or right thereto and without plaintiffs' consent, and against their will, has held possession of the entire property described in the complaint. In a second cause of action, plaintiffs claim as damages the civil fruits produced or which should have been produced by the aforesaid joint ownership, said fruits being estimated in the sum of $1368.

Defendant accepted that he held possession of the property sued on since June 1937, but he denied the other averments of the complaint, raising the following special defenses:

(*a*) That the action is barred pursuant to § 1857 of the Civil Code (1930 ed.) inasmuch as defendant has possessed the property with a just title, as owner, publicly, peacefully and uninterruptedly for over 10 years;

(*b*) That defendant is a third party mortgagee; and

(*c*) That the house sued on, according to the records in the Registry of Property of Humacao, (*sic*) was built by

Isabel Llorens Quintana while married to Santiago Morales Dávila, that subsequently, said Isabel Llorens Quintana acquired as his heir the one–half share corresponding to her husband in the house; that later in an action filed before the Municipal Court of Caguas by Juan Jiménez García against Isabel Llorens Quintana, the aforesaid property was auctioned off, in execution of judgment and Juan Jiménez García plaintiff therein, acquired it and sold it to the defendant Caraballo in June 1937.

After filing the answer, the lower court granted defendant's motion for summary judgment. On appeal we reversed said judgment and remanded the case to the court *a quo* for a trial on the merits. *Hernández* v. *Caraballo*, 72 P.R.R. 628.

After the corresponding trial on the merits was held, the trial court rendered judgment in favor of defendant dismissing the complaint and imposing on plaintiffs the payment of costs and the sum of $250 for attorney's fees. Plaintiffs took the present appeal from said judgment assigning the following errors:

(1) In concluding as a question of fact and of law by taking into consideration the personal testimony of defendant only, that plaintiffs' action was barred;

(2) In concluding as a question of law that even assuming that plaintiffs' testimony to the effect that defendant acquired (*sic*) in bad faith, were believed, such testimony would be insufficient to establish that fact; and

(3) In holding that plaintiffs had acted with obstinacy in filing and prosecuting this suit and consequently in ordering them to pay attorney's fees.

The court *a quo* concluded that Ursula Hernández died intestate on December 21, 1918, leaving as her only heirs her two brothers Gabriel and Isidoro Hernández and her widower Santiago Morales in the usufructuary quota corresponding to each of her brothers Gabriel and Isidoro, as such heirs, a joint ownership of an undivided one-fourth

interest in the house described in the complaint.   Said court also stated that:

"2.  Isidoro Hernández sold his hereditary share in the house described in the preceding paragraph (and another) to his brother-in-law Santiago Morales by deed No. 118 executed in September 1926, I mean September 25, 1926, before Notary Miguel Rodríguez Alberty, but not Gabriel Hernández Rivera who died on January 4, 1923 without disposing of his hereditary share and instituting as his only and universal heirs his children who are plaintiffs herein.

"3.  The widower Santiago Morales Dávila contracted a second marriage with Matilde, I mean, Isabel Matilde Llorens. While married to her, he died on October 12, 1935, under a will executed on September 5, 1935 before notary Antonio L. López, having instituted his said wife Isabel Matilde Llorens as his sole and universal heir.

"4.  On June 23, 1936, Isabel Matilde Llorens recorded, by testate inheritance, one half of the property previously described at folio 128, over, of volume 45 of Gurabo.

"5.  On that same date, and at the first entry, at folio 191 of volume 45 of Gurabo, the aforesaid Matilde Llorens recorded the other half of the house in her name as half of the conjugal property belonging to her from her marriage to Santiago Morales;  in said entry it was set forth that the house had been built by said spouses.

"6.  Juan Jiménez García filed suit against  Isabel Llorens before the Municipal Court of Caguas for  the recovery of the amount of FOUR HUNDRED SEVENTY-TWO DOLLARS ($472) and obtained judgment after default was entered on defendant, and after following the proper proceeding for the execution of judgment, the Marshal of the court adjudicated the house object of this action to said Juan Jiménez García for the amount of TWO HUNDRED DOLLARS ($200), to be credited to his claim.   On June 23, 1936, Juan Jiménez García recorded his property right on the aforesaid house at folio 192 of volume 45 of Gurabo, free of liens.

"7.  By deed No. 141 of June 8, 1937, executed before Notary Antonio L. López, Juan Jiménez García and his wife sold the afore-mentioned house, free of liens, to Wenceslao Caraballo for the amount of THREE HUNDRED DOLLARS ($300).   Said sale was recorded on June 17, 1937 at folio 193 of volume 45 of Gurabo, this being the last record connected with said property.

"8. When Wenceslao Caraballo bought the house sued on, the record showed that it was free of liens in the name of its vendor Juan Jiménez García without the Registry showing any defect invalidating his title, nor could the buyer, defendant herein, have knowledge of any intrinsic defect appearing upon the face of the title of the property.

"9. In the opinion of the court the only knowledge that defendant Wenceslao Caraballo had when he acquired the house was what appeared from the Registry; the court gives no credit to plaintiff's evidence to the effect that defendant had knowledge that a part of the house belonged to the heirs of Gabriel Hernández and not to Isabel Llorens.

"10. From plaintiffs' evidence it appears that the house sued on was acquired by Santiago Morales in his marriage to his first wife Ursula Hernández Rivera by construction at their expense, the house never having belonged to the conjugal partnership which was later constituted by said Santiago Morales in his second marriage to Isabel Llorens. It thus appears from deed No. 118 of September 25, 1926 executed before Notary Miguel Rodríguez Alberty in which Isabel Llorens herself admits this fact. However, the evidence believed by the court is to the effect that defendant never had knowledge of that fact nor of the afore-mentioned deed, having acquired the property in good faith.

"11. Defendant has possessed the property sued on, as owner, publicly, peacefully, and uninterruptedly from the time of its acquisition until the date of the complaint, its previous owners having possessed it in like manner, and among all possessing it for over a period of 10 years.

"12. Plaintiffs have acted with obstinacy in filing and prosecuting this action."

We have examined the transcript of evidence and undoubtedly the previous findings of fact are amply supported by the evidence.

Discussing the first error appellants urge: (a) that their action has not prescribed as the lower court held because defendant has not possessed the property in litigation for over 10 years prior to the filing of the complaint and (b) that appellee has not possessed said property in good

faith. In connection with the question of prescription it is enough to say that although it is true that defendant alleged in his answer that he had been possessing the house sued on since June 1937, the evidence shows that Isabel Matilde Llorens recorded the ownership of said house in her name in the Registry of Property of Caguas on June 23, 1936. The evidence also showed that prior to that day the aforesaid Isabel Matilde Llorens had been possessing the house, first, together with her husband and then, after his death, as an only owner until said property was auctioned off in March 1936 to Juan Jiménez García, who in turn possessed it until the day he, sold it to defendant Caraballo, in June 1937. [1] To compute the time of possession established by § 1857 of the Civil Code (1930 ed.) [2] defendant-appellee could complete the time necessary for prescription by adding to his time that of the previous owner. Section 1860 of the Civil Code; *Dumont* v. *Registrar of Guayama*, 30 P.R.R. 268; *Pérez et al.* v. *Colom et al.*, 40 P.R.R. 380; *Mollá* v. *Mck. Jones*, 41 P.R.R. 901. Assuming that the defense of prescription was not alleged with due sufficiency in the answer, this may be considered as amended for the purpose of conforming it to the evidence. *People* v. *Heirs of Valdés*, 31 P.R.R. 213; *Maniscalco & Nuccio* v. *Sancho, Treas.*, 51 P.R.R. 499; *Viñas* v. *Hernández*, 60 P.R.R. 269; *Tuya* v. *White Star Bus Line, Inc.*, 59 P.R.R. 784; *Heirs of Cuadra* v. *López*, 41 P.R.R. 67. Rule 15 (*b*) of the Rules of Civil Procedure. In such a case it is evident that defendant-appellee had possessed the aforesaid house for over 10 years.

■ The appellants also insist that appellee has not pos-

---

[1] Plaintiff intended to prove by the testimony of two witnesses, that they possessed jointly with Juan Jiménez García the house sued for but the court *a quo* did not give credit to said testimonies. The record does not show that in so acting it committed manifest error.

[2] Said Section reads as follows:

"Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title."

sessed in good faith, this being an indispensable requisite in order that the ordinary prescription of ownership and other property rights may run. However, his efforts are directed to attack the weighing of the evidence made by the court *a quo* regarding that point. "Good faith of the possessor—as stated in § 1850 of the Civil Code—consists in his belief that the person from whom he received the thing was the owner of the same, and could convey his title." The appellants urge that the evidence shows in a prevailing way that the appellee had knowledge that the vendor Juan García Jiménez was not the owner of appellants' joint ownership. They forget, however, that the evidence on that particular was contradictory and that the court *a quo* decided the conflict against them. The court could correctly find proved, as it did, on defendant's sole testimony as against plaintiffs' opposing evidence, that the former had no knowledge that his title was defective. In establishing this fact as proved, the court gave full credit to defendant Caraballo. "The direct evidence of one witness who is entitled to full credit— as set forth in § 380 of the Code of Civil Procedure. (§ 18 of the Law of Evidence)—is sufficient for proof of any fact, except perjury and treason." As we stated in *Ballester* v. *Farm & Dairy Products, Inc.*, 58 P.R.R. 483, the witnesses are weighed, not counted, and the trial judge, who saw and heard the witnesses testify, weighed the evidence and in his opinion the balance was in favor of the plaintiff. See also among others, the cases of *Gutiérrez* v. *Pérez et al.*, per curiam decision ('60 *D.P.R.* 932) ; *Ochoteco* v. *Córdova*, 47 P.R.R. 522; *Díaz* v. *Hamburger Bros. & Co.*, 44 P.R.R. 877; *Meléndez* v. *Morales*, 43 P.R.R. 774 and *Pol* v. *Suau, Fiol & Co.*, 44 P.R.R. 67.

■ On the other hand, although the court *a quo* did not make any specific pronouncement whatsoever regarding the third-party defense raised by defendant, the record shows that said defendant bought from a person who, according to the Registry of Property, was entitled to sell to him

without said Registry clearly showing any defects that might render void the recorded title so conveyed and since said court concluded that the aforesaid defendant never had knowledge that plaintiff had any share whatsoever in the property, he may and should be considered as a third party pursuant to § 34 of the Mortgage Law. See among others, the cases of *Annoni* v. *Heirs of Nadal*, 59 P.R.R. 638; *Larracuenta* v. *Fabián*, 56 P.R.R. 743, 757 and *Ayllón et al.* v. *González et al.*, 28 P.R.R. 61.

■ The first error assigned was not committed. Neither was the second. Certain commentaries and reasonings of the trial judge are discussed therein regarding the evidence of plaintiffs to the effect that even in the assumption that he believed said evidence he would have doubts whether the same was sufficient to establish the bad faith in defendant. Actually that was not necessary inasmuch as said judge did not give credit to plaintiffs' evidence. However, this does not mean that he has committed an error. On the assumption that the reasonings set forth to that effect by the trial judge were erroneous, the appeal is taken from the judgment and not from its reasonings or grounds. *Bird* v. *Bird*, 69 P.R.R. 342; *Ex parte Montalvo*, 70 P.R.R. 437; *Rivera* v. *Hernández*, 70 P.R.R. 521; *Varela* v. *Fuentes*, 70 P.R.R. 838; *Rodríguez* v. *Suárez*, 71 P.R.R. 681; *Santiago* v. *González*, 71 P.R.R. 882.

■ The third error attacks the pronouncement as to the payment of attorney's fees by plaintiffs. The court *a quo* held that "plaintiffs have acted with obstinacy in filing and prosecuting this action." We have not been shown that in so doing an error was committed. On previous occasions we have stated that "trial courts are bound to grant attorney's fees when in their opinion the party against whom judgment is entered shall have acted rashly." *Font* v. *Pastrana*, 73 P.R.R. 238.

Since the errors assigned by appellants have not been committed, the judgment appealed from will be affirmed.